UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DAMECHA HARRIS,

                              Petitioner,          **DECISION AND ORDER**

        -vs-                                        **No. 07-CV-6504(VEB)**

JAMES CONWAY, Superintendent,

                              Respondent.

_____

## I.    INTRODUCTION

Petitioner Damecha Harris ("Harris" or "Petitioner"), proceeding *pro se*, filed a petition

for a writ of habeas corpus[1] challenging his conviction on November 23, 1998, in Erie County

Supreme Court, on charges of assault.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    The State Court Convictions

The events giving rise to the conviction here at issue occurred on January 20, 1997, while

Harris was incarcerated in the Wende Correctional Facility, serving a sentence of fifteen years to

life following a conviction on charges of second degree robbery.  Harris, along with fellow

inmate Patrick Smith ("Smith"), instigated an assault on Correction Officer Stephen Gambino

("Gambino" or "the victim"), while Gambino was carrying out an order to frisk Harris' prison

cell at the facility. Harris originally was charged as both a principal and an accomplice for his

role in the assault.

_____

        [1]      The parties consented to final disposition of this matter by a magistrate judge pursuant to 28
U.S.C. § 636(c).

According to Gambino, when he arrived at 9:30 a.m. to do the cell frisk, Harris was asleep. Upon being informed of the cell frisk, Harris stated that "no motherfucking officer's telling me what to do and before any officer tells me what to do, I'll kill you." T.53.[2] Gambino ignored Harris' display of temper and ordered him to get dressed, whereupon Harris again threatened to kill Gambino if he (Gambino) tried to search Harris' cell. T.55. Gambino told Harris that he had to leave the cell but that he could observe the cell frisk, provided that he calmed down and remained calm. T.56.

Harris exited the cell as ordered and took a position against the opposite wall so that he could watch Gambino conduct the cell frisk, *e.g.*, T.167-69, which revealed that Harris had several pairs of pants over the limit, six pack-up bags, and a broken mirror with a jagged edge–all items of contraband. T.58. While Gambino was searching the cell, Harris ranted that Gambino would be a "motherfucking dead man" if he took Harris' property. T.58. Gambino ordered petitioner, who was still yelling irately, to go to the shower room and lock himself in so that Gambino could exit the cell. Petitioner refused.  Correction Officer Doktor ("Doktor") responded to Gambino's call for assistance, but they were unable to force Harris to lock himself into the shower room. T.62, 63. At this point, the victim recalled that he told Doktor to summon Correction Officer Frederick Hogg ("Hogg").

Hogg came to the cell block area, and stood in Harris' cell door opening trying to talk Harris into locking himself into the shower. T.65, 66; *see also* T.173-74. This effort was unsuccessful, and Doktor recalled that Harris demanded to speak with a sergeant. T.174. Doktor went to his desk, called for a sergeant and, as he was returning to the cell block, saw Harris

---

[2]        Citations to "T.___" refer to the trial transcript.

entering his cell. What occurred next can only be described as a melée.

Gambino recalled that while he as still inside the cell, petitioner rushed into the cell and charged Hogg, knocking Hogg aside. Then, Harris began struggling with Gambino. Doktor testified on cross-examination that he did not see Hogg in the cell doorway when Harris entered and did not see Harris knock Hogg out of the way. T.186-88. Hogg testified that as he was approaching the cell block in response to Doktor's call for assistance, he saw petitioner standing outside the cell beside the radiator arguing with Gambino, who was inside the cell. T.201. Although Hogg could hear that they were yelling at each other, he could not hear what was being said. He did observe Harris pounding his fist into his hands in what Hogg perceived to be a threatening manner. T.203. Hogg testified that as he approached, he saw petitioner push Gambino into the cell. Hogg was about to enter the cell when he observed inmate Smith coming toward him. Hogg was grabbed by another unidentified inmate, giving Smith the opportunity to enter the petitioner's cell. T.204.

Gambino testified that when petitioner entered the cell, he grabbed Gambino in his upper body area, and a struggle ensued. T.66. Petitioner, who apparently was restrained to some extent by Gambino, eventually managed to free one of his arms and punched Gambino several times in the face, head, neck and shoulder area. T.66-67.  Gambino testified that at some point, petitioner fell on top of his bunk, and Gambino fell on top of him. Meanwhile, Gambino recalled, Smith was hitting Gambino in the back of the head and the neck area. T.68. By the time Hogg arrived, he observed Gambino on the bed wrestling with petitioner; Smith was on top of Gambino moving his clenched fist "in an up and down motion" toward the victim's head area. T.206.

Correction Officer William Sandor ("Sandor") then arrived at the cell in response to the

level 2 alarm sounded by Doktor. Sandor saw Smith run into the cell and begin hitting Gambino with a closed fist in the back of the head. T.245. Gambino was on top of petitioner who was face-up on the bunk. T.245, 248. Sandor entered the cell and removed co-defendant Smith. When Correction Officers McGough and Higley arrived to provide further assistance, McGough recalled petitioner and the victim were wrestling inside petitioner's cell. McGough assisted Sandor in restraining petitioner and also assisted in removing him from the scene. T.70, 72-73, 157-59.

With regard to the injuries suffered by Gambino during the assault, Sandor and Doktor recalled that when Gambino came out of the cell, he "was hurting." After the altercation Gambino's face neck area appeared red and he complained of neck pain. *See* T.181, 231-32, 249, 257.

Dr. Federick McAdam testified that he had first diagnosed Gambino with cervical disk pain on January 22, 1996. T.280-81. Gambino underwent pain control therapy in 1996; this culminated in the administration of two epidural steroid injections in April and May of 1996 which reportedly improved his condition. T.282. When McAdam saw Gambino in September 1996, Gambino's range of motion in his neck was limited by fifty percent. T.283-84.

McAdam next saw Gambino on January 28, 1997, about a week after the altercation with petitioner. At that time, Dr. McAdam determined that Gambino had a seventy-five-percent limitation in his neck range of motion and diagnosed him as being temporarily totally disabled. T.286. Dr. McAdam testified that prior to the incident, Gambino always had been able to work, notwithstanding his neck condition. Dr. McAdam opined that something happened between September 1996 and January 1997 which caused further injury to the victim's neck. T.289.  Dr.

McAdam administered another epidural steroid injection on February 8, 1997, and kept him out

of work until April 1, 1997. T.285, 288. Dr. McAdam indicated that Gambino's disk problem

could "flare up" or be exacerbated by, for instance, Gambino receiving a punch in the back of the

neck or being involved in a bout of wrestling or a fight. T.308.

Following a jury trial, Harris was convicted of one count of assault in the second degree,

as charged in the indictment, as well as the lesser included offense of assault in the third degree.

Harris was sentenced as a persistent violent felony offender to concurrent terms of imprisonment

of 15 years to life on the second degree assault conviction and one year on the other conviction.

The sentences for the assault on Gambino were to be served consecutively to any undischarged

term of imprisonment that Harris was serving. Harris' conviction was unanimously affirmed and

leave to appeal further was denied.

**B.     The Federal Habeas Petition**

**1.     The Petition and Stay Motion**

In his petition, Harris asserted that trial counsel was ineffective, that the prosecutor

knowingly allowed a witness to perjure himself on the stand, and that there was legally

insufficient evidence to support his conviction. Respondent answered the petition, interposing the

defense of non-exhaustion with regard to all of Harris' claims. In response, Harris filed a motion

seeking to have his petition stayed and held in abeyance while he returned to exhaust state court

remedies with regard to the claims that respondent contends are unexhausted.

Because Harris failed to allege "good cause" for his failure to exhaust the claims before

filing his petition in federal court, and no good cause was apparent on the record before me, I

found that it would be an abuse of discretion to grant a stay of this habeas proceeding to allow

Harris to return to state court to institute exhaustion proceedings, particularly since Petitioner

sought a stay motion only after Respondent filed his answer raising the defense of non-

exhaustion. *See Rhines v. Weber*, 544 U.S. 269, 277-78 (2005).[3]  I therefore denied Harris'

motion for a stay with prejudice.

I further concluded that not only were the claims at issue plainly without merit,  none of

the claims raised by Harris in his petition warranted habeas relief under any standard of review. I

therefore bypassed the exhaustion issue and proceeded to analyze the merits of the claims, and

denied the  petition on the merits pursuant to the authority vested in the federal courts pursuant to

28 U.S.C. § 2254(b)(2). A Decision and Order denying Harris' request for a writ of habeas

corpus was filed on April 9, 2008. *See* Docket No. 17 (Decision and Order) & Docket No. 18

(Judgment).

### 2.        Notice of Appeal and the "Supplemental" Filings

Harris, on or about June 3, 2008, filed a notice of appeal and a motion for an extension of

time to file the notice of appeal. *See* Docket Nos. 19 & 20. On October 14, 2008, this Court

denied the motion for an extension of time to file, finding that Harris had not established that he

"did not receive [notice of the entry of the judgment] from the clerk or any other party within 21

days of its entry." FED. R. APP. P. 4(a)(6). *See* Docket No. 23. Harris then filed another notice

of appeal (Docket No. 24) on or about August 26, 2010, seeking to appeal the denial of his

habeas petition. On or about November 4, 2010, Harris filed a pleading docketed as a

---

[3]        The Supreme Court stated in *Rhines* that "it likely would be an abuse of discretion for a district
court to deny a stay and to dismiss a mixed petition if the petitioner had [1] good cause for his failure to exhaust, [2]
his unexhausted claims are potentially meritorious, and [3] there is no indication that the petitioner engaged in
intentionally dilatory litigation tactics." 544 U.S. at 278. On the other hand, the Supreme Court explained, even if a
petitioner had "good cause" for the failure to exhaust the claims first, it would be an abuse of discretion to grant a
stay when the claims are "plainly meritless." *Id.* at 277 (citing 28 U.S.C. § 2254(b)(2)).

"Supplement to Habe [sic] Filing", i.e., a supplement to his August 2010 notice of appeal. The index to the record on appeal was sent to the Second Circuit Court of Appeals on December 2, 2010. *See* Docket No. 26.

On December 22, 2010, Harris filed a 44-page pleading which was docketed as an "Amended Supplement [sic] Federal Writ of Habeas Corpus". *See* Docket No. 27. This pleading essentially repeated the allegations and arguments made in the "Supplement to Habe [sic] Filing" (Docket No. 25).

On January 19, 2011, the Second Circuit issued a mandate (Docket No. 29) finding, *sua sponte*, that Harris' notice of appeal had been untimely filed. Accordingly, the Second Circuit dismissed the appeal for lack of jurisdiction, citing FED. R. APP. P. 4(a)(1) and *Bowles v. Russell*, 551 U.S. 205, 214 (2007).

Upon reviewing Harris' supplemental filings (Docket Nos. 25 & 27) in detail, it appears that they should have been docketed as motions seeking relief from judgment pursuant to FED. R. CIV. P. 60(b). Accordingly, the Clerk of the Court is directed to re-docket them to reflect this re-designation.

For the reasons set forth below, Harris' Rule 60(b) motions for relief from judgment (Docket Nos. 25 & 27) are denied with prejudice.

## III.    DISCUSSION

### A.    General Legal Principles Regarding Rule 60(b) Motions For Relief From Judgment

Under Rule 60(b), a court may grant relief from a final judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial . . .;
> (3) fraud . . ., misrepresentation, or other misconduct of an adverse party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
> (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b)(1-6). Importantly, Rule 60(b) is not a vehicle for rearguing the merits of the challenged decision. *Fleming v. New York Univ.*, 865 F.2d 478, 484 (2d Cir.1989) ("[A] Rule 60(b)(3) motion cannot be granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits.") (citations omitted). Rather than standing in for an ordinary appeal, Rule 60(b) provides relief only in exceptional circumstances. *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986); *see also Harris v. United States*, 367 F.3d 74, 77 (2d. Cir.2004) ("[A]n attack on the integrity of a previous habeas proceeding using subsection (6) of Rule 60(b) is viable only in 'extraordinary circumstances.'"). Granting a Rule 60(b) motion requires a showing of "extraordinary circumstances" to "justify [ ] the reopening of a final judgment." *Gonzalez v. Crosby*, 545 U.S. 524, 535, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005) (citations and quotation marks omitted). *See also Mendell v. Gollust*, 909 F.2d 724, 731 (2d Cir.1990) (finding that relief under Rule 60(b) may be granted "only upon a showing of exceptional circumstances").

### B.    Analysis of Petitioner's Claims

### 1.    "Newly Discovered Evidence" and *Whitley v. Senkowski*,

Quoting Rule 60(b)(a), Harris asserts that he has "newly discovered evidence" of his innocence which, he claims, by due diligence could not have been discovered in time to move for

a new trial under Rule 59. He cites to *Whitley v. Senkowski*, 337 F.3d 223 (2d Cir. 2003), and asserts that this case mandates grant of Rule 60(b) relief. In particular, he argues that because he has adduced new evidence of his innocence, this Court erroneously denied his petition as untimely. This argument is based upon a misapprehension of the law and facts.

Firstly, *Whitley* is wholly inapposite to the present case. Whitley, in a *pro se* 28 U.S.C. § 2254 petition for a writ of habeas corpus, argued (1) that he was actually innocent of the crimes for which he was convicted; (2) that his Sixth Amendment right to counsel was violated when the state court required him to proceed *pro se* on reargument of his direct appeal; and (3) that the state withheld exculpatory material. In support of his petition, Whitley submitted, among other things, the alleged transcript of a 1990 interview between a chief eyewitness and his trial attorney in which the eyewitness, recanting her testimony, stated that she had not seen Whitley on the night of the murder and that the State had coerced her into testifying in return for dropping a pending assault charge.

The district court ordered Whitley to show cause why the petition should not be dismissed as time-barred under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214.[4] In response, Whitley stated, "Your Honor, I am innocent. . . ." The State moved to dismiss Whitley" petition pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the petition was untimely. The district court agreed and for that reason denied Whitley's petition without addressing the actual innocence claim.

---

[4] AEDPA imposes a one-year statute of limitations on habeas corpus petitions brought after April 24, 1996. The statute of limitations applies to petitions under both § 2254 and § 2255. See 28 U.S.C. § 2244(d)(1).

The Second Circuit held that it was error for the district court, without further analysis, to dismiss, on statute of limitations grounds, Whitley's habeas petition asserting a claim of actual innocence. The Second Circuit therefore vacate the district court's judgment and remand for the district court to decide as a matter of fact whether Whitley has presented a credible claim of actual innocence, instructing the court to consider "whether Whitley was reasonably diligent in pursuing his claim of actual innocence and, if not, whether reasonable diligence is a precondition of pressing his constitutionally based actual innocence claim."

The Supreme Court has yet to decide whether there is an "actual innocence" exception to the AEDPA statute of limitations, and the Second Circuit side-stepped that question in *Whitley*. It is unnecessary for this Court to venture into the fray because the issue is not presented under the facts of this case.

Unlike Whitley, and contrary to Petitioner's contention, this Court did not refuse to address the claim of actual innocence on statute of limitations grounds. Rather, the Court considered all of the claims presented by Harris in his petition on the merits. The claim upon which Harris has based his Rule 60(b) motions was not presented in the habeas petition. Most importantly for present purposes, it is totally without merit.

In order to show actual innocence, "a petitioner must present 'new reliable evidence that was not presented at trial' and 'show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'" Lucidore v. New York State Div. of Parole, 209 F.3d 107, 114 (2d Cir.), cert. denied, 531 U.S. 873, 121 S.Ct. 175, 148 L.Ed.2d 120 (2000) (quoting Schlup v. Delo, 513 U.S. 298, 324, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)); accord, e.g., Whitley, 317 F.3d at 225.

The gravamen of Harris' "actual innocence" claim is that the "same assault charges [on which he was convicted] were (dismissed) by criminal court Judge Esack in Alden County on Sept. 11, 1997 (See Exhibit B) (Certificate of Disposition) (Nethertheless [sic]; these defendants all in a (separate proceedings) ("turns [sic] right back around") and (uses) the same assault charges that was [sic] dismissed" to obtain the conviction at issue here. Pet'r Aff., ¶9. The "Exhibit B" to which Harris refers is a "Certificate of Disposition" for Alden Town Court, Criminal Part, in Erie County, New York. The Certificate of Disposition reads as follows:

| Section Charged | Section Disposed | Ticket No & Description | Disposition | Fine | Civil-Fee | Surchg [sic] |
|---|---|---|---|---|---|---|
| PL 120.05 | PL 120.05 | APPEAR Assault-2nd | Grand Jury | 0.00 | 0.00 | 0.00 |

Underneath the above-reproduced table, it states that "Upon a proper request for an official statement of disposition, I certify that the above named defendant having appeared by this court was charged as shown above. Each of the charges was disposed of as indicated." The form was signed by Hon. Albert Gerhart on June 28, 2010. A handwritten note clarifies that the "case was disposed of by Hon. Kathleen O'Connor Esack".

Harris interprets the Certificate of Disposition to mean that the case was dismissed. This is incorrect. The only reasonable reading of the Certificate is that the matter was sent to the Erie County Grand Jury to determine whether an indictment should be returned.

The form indicates that after he was arraigned on the appearance ticket on September 11, 1997, in the Criminal Part of Alden Town Court, Harris' case was presented to a grand jury. A town court, like the one over which Judge Esack presided, is one of the criminal courts of this state and as such, it has "[p]reliminary jurisdiction of all offenses" but that jurisdiction is "subject

to divestiture thereof in any particular case by the superior courts and their grand juries."

N.Y.Crim.Proc.Law § 10.10, § 10.30(2). What happened in Harris' case is that jurisdiction over

his case was divested from Alden Town Court by means of the Erie County grand jury's return of

an indictment charging him with assault, which he originally had been accused of in the

appearance ticket. Contrary to Harris' contention, the case was not "disposed of" in the sense that

it was "thrown out" or otherwise dismissed. Rather, the prosecution, as it was entitled to do,

presented evidence to a grand jury, and the grand jury determined that such evidence was

sufficient to return an indictment charging Harris with second degree assault. In no way does the

Certificate of Disposition establish that the case against him was dismissed, much less that he is

actually, factually innocent.

### 2.   Fraud, Misrepresentation, and Misconduct by the Prosecution

Citing to Rule 60(b)(3), which permits relief from judgment in the event of "fraud . . . ,

misrepresentation, or other misconduct of an adverse party[,]" Fed. R. Civ. P. 60(b)(3), Harris

contends that prosecution procured his conviction by perpetrating a fraud upon the trial

court–that is, by not informing the trial court that the charges against him had been dismissed.

This contention is a reworking of the allegations discussed in Section III.b.1, *supra*, which are

totally baseless.

## IV.   Conclusion

Damecha Harris' supplemental filings (Docket Nos. 25 ("Supplement to Habe Filing"), &

27 ("Amended Supplement Federal Writ of Habeas Corpus")) should be re-docketed as motions

seeking relief from judgment pursuant to FED. R. CIV. P. 60(b). After considering carefully all of

Harris' submissions, I find, for the reasons stated above, that Harris has not established facts

warranting Rule 60(b) relief. Accordingly, Harris' motions for relief from judgment (Docket Nos. 25 & 27) are denied with prejudice. Because Harris has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:      April 17, 2011
            Rochester, New York.